# 26-1427(L), 26-1428(CON)

# In the United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,

*Plaintiff–Appellant*,

v.

CARLOS JAVIER ESPINOZA-CABRERA,
FRANKLIN AMADEO TENECELA-AGUAIZA,

*Defendants–Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
NOS. 8:26-cr-00061, 8:26-cr-00062 (Hon. Anne M. Nardacci)

## OPENING BRIEF FOR THE UNITED STATES

A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

M.J. KIRSCH MUÑOZ
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 549-8941
Mary.Jessica.Munoz2@usdoj.gov

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF THE ISSUE ..... 1

STATEMENT OF THE CASE ..... 1

I. Statement of Facts ..... 2

II. Procedural History ..... 3

SUMMARY OF ARGUMENT ..... 5

ARGUMENT ..... 6

This Court Should Hold That Eluding Inspection Under § 1325(a)(2) Is a Continuing Offense for Venue Purposes ..... 6

A. Standard of Review ..... 6

B. Legal Background ..... 7

C. The Plain Text of § 1325(a)(2) Establishes that Eluding Inspection Is a Continuing Offense ..... 8

D. Other Interpretive Clues Confirm that Eluding Inspection Is a Continuing Offense ..... 18

E. The District Court's Contrary Reasoning Falls Short ..... 23

CONCLUSION ..... 37

CERTIFICATE OF COMPLIANCE ..... 38

CERTIFICATE OF SERVICE ..... 39

## TABLE OF AUTHORITIES

### Cases

*Abouammo v. United States*,
146 S. Ct. 1571 (2026) ........ 7, 8, 22

*Alta Partners, LLC v. Getty Images Holdings, Inc.*,
165 F.4th 141 (2d Cir. 2026) ........ 9

*Barbosa da Cunha v. Freden*,
175 F.4th 61 (2d Cir. 2026) ........ 12

*Barton v. Barr*,
590 U.S. 222 (2020) ........ 33

*Bates v. United States*,
522 U.S. 23 (1997) ........ 18

*Brown v. United States*,
602 U.S. 101 (2024) ........ 37

*Clark v. Martinez*,
543 U.S. 371 (2005) ........ 22

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) ........ 20

*Groff v. DeJoy*,
600 U.S. 447 (2023) ........ 9

*Mullin v. Al Otro Lado*,
146 S. Ct. 2079 (2026) ........ 12, 15, 25, 33

*N.L.R.B. v. SW Gen., Inc.*,
580 U.S. 288 (2017) ........ 34

*Pugin v. Garland*,
599 U.S. 600 (2023) ........ 36

*Pulsifer v. United States*,
601 U.S. 124 (2024) .......... 36

*Rotkiske v. Klemm*,
589 U.S. 8 (2019) .......... 17

*Russello v. United States*,
464 U.S. 16 (1983) .......... 20

*Smith v. United States*,
568 U.S. 106 (2013) .......... 26

*Snyder v. United States*,
603 U.S. 1 (2024) .......... 19

*Stone v. I.N.S.*,
514 U.S. 386 (1995), *abrogated on other grounds as recognized in Riley v. Bondi*, 606 U.S. 259 (2025) .......... 24

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .......... 17

*Toussie v. United States*,
397 U.S. 112 (1970) .......... 8, 21, 27, 29

*U.S. Postal Serv. v. Konan*,
607 U.S. 391 (2026) .......... 33

*United States v. Bailey*,
444 U.S. 394 (1980) .......... 10, 11, 16, 21, 26, 27, 29

*United States v. Balde*,
943 F.3d 73 (2d Cir. 2019) .......... 9, 11

*United States v. Bulloch*,
165 F.4th 676 (2d Cir. 2026), *petition for cert. filed*, No. 26-5081 (July 6, 2026) .......... 6, 9, 18

*United States v. Canal Barge Co.*,
631 F.3d 347 (6th Cir. 2011) .......... 27, 29, 35

*United States v. Cavillo-Rojas*,
510 Fed. App. 238 (4th Cir. 2013) .......................................................17

*United States v. Cores*,
356 U.S. 405 (1958) .................................................................................16

*United States v. Corrales-Vazquez*,
931 F.3d 944 (9th Cir. 2019).................................12, 23, 25, 28, 30, 31

*United States v. Davis*,
588 U.S. 445 (2019) ..........................................................................35, 36

*United States v. Gambino-Ruiz*,
91 F.4th 981 (9th Cir. 2024) ..........................................................13, 15

*United States v. George*,
625 F.3d 1124 (9th Cir. 2010), *vacated on other grounds*,
672 F.3d 1126 (9th Cir. 2012)...............................................................10

*United States v. Gray*,
876 F.2d 1411 (9th Cir. 1989)...............................................................21

*United States v. Johnson*,
323 U.S. 273 (1944) ...................................................................................8

*United States v. Lewis*,
768 F.3d 1086 (10th Cir. 2014).............................................................21

*United States v. Martin*,
378 F.3d 578 (6th Cir. 2004).................................................................11

*United States v. Merino*,
44 F.3d 749 (9th Cir. 1994)...................................................................11

*United States v. Oscar*,
496 F.2d 492 (9th Cir. 1974).................................................................28

*United States v. Pontz*,
132 F.4th 10 (1st Cir. 2025)..................................................................29

*United States v. Reitmeyer*,
356 F.3d 1313 (10th Cir. 2004) .......... 27

*United States v. Rincon-Jimenez*,
595 F.2d 1192 (9th Cir. 1979) .......... 23, 24

*United States v. Rivera-Ventura*,
72 F.3d 277 (2d Cir. 1995) .......... 34

*United States v. Rodriguez-Moreno*,
526 U.S. 275 (1999) .......... 16, 27

*United States v. Slutsky*,
487 F.2d 832 (2d Cir. 1973) .......... 10

**Statutes, Regulations, and Constitutional Provisions**

U.S. Const. amend. VI .......... 4, 7

U.S. Const. art. III, § 2, cl. 3 .......... 4, 7

8 U.S.C. § 1101(a)(3) .......... 3

8 U.S.C. § 1101(a)(13)(A) .......... 12

8 U.S.C. § 1182(a)(1) .......... 20

8 U.S.C. § 1182(a)(2) .......... 20

8 U.S.C. § 1182(a)(3) .......... 20

8 U.S.C. § 1225 .......... 12

8 U.S.C. § 1225(a) .......... 12, 23

8 U.S.C. § 1225(a)(1) .......... 12, 13

8 U.S.C. § 1225(a)(3) .......... 12, 13, 15

8 U.S.C. § 1225(a)(5) .......... 13

8 U.S.C. § 1225(b) ............................................................ 12, 14, 23
8 U.S.C. § 1225(b)(1) ............................................................ 13
8 U.S.C. § 1225(b)(1)(A) ............................................................ 13
8 U.S.C. § 1225(b)(1)(B) ............................................................ 13
8 U.S.C. § 1225(b)(1)(B)(i) ............................................................ 14
8 U.S.C. § 1225(c)(1) ............................................................ 20
8 U.S.C. § 1302 ............................................................ 32
8 U.S.C. § 1306(a) ............................................................ 30, 32
8 U.S.C. § 1325(a) ............................................................ 36
8 U.S.C. § 1325(a)(1) ............................................................ 7, 16
8 U.S.C. § 1325(a)(2) ............................................................ 1, 2, 3, 5, 7, 11, 32
8 U.S.C. § 1325(a)(3) ............................................................ 7, 16
8 U.S.C. § 1329 ............................................................ 7, 11
18 U.S.C. § 1073 ............................................................ 11
18 U.S.C. § 2250 ............................................................ 10
18 U.S.C. § 3237(a) ............................................................ 8
18 U.S.C. § 3401 ............................................................ 1
18 U.S.C. § 3402 ............................................................ 1
26 U.S.C. § 7201 ............................................................ 10
28 U.S.C. § 636 ............................................................ 1
28 U.S.C. § 1291 ............................................................ 1

8 C.F.R. § 100.4(a) .......... 15

8 C.F.R. § 235.1(f)(2) .......... 14

8 C.F.R. § 235.2(a) .......... 14

8 C.F.R. § 235.3(b)(1)(ii) .......... 14

Act of Mar. 4, 1929, Pub. L. No. 70-1018, 45 Stat. 1551 .......... 18

Immigration Act of 1917, Pub. L. No. 64-301, 39 Stat. 874 .......... 18

Immigration and Nationality Act, Pub. L. No. 82-414, 66 Stat. 163, (1952) .......... 24

**Other Authorities**

Restriction of Immigration: Hearings on H.R. 5, H.R. 101, and H.R. 561 Before the H. Comm. on Immigration & Naturalization, 68th Cong. 680 (1924) .......... 19

U.S. Citizenship & Immigr. Servs., Find A USCIS Office, https://tinyurl.com/bdf99y6y (last updated Mar. 12, 2024) .......... 14

U.S. Customs & Border Patrol, Locate a Port of Entry, https://tinyurl.com/3bu3z55n .......... 15

U.S. Immigr. & Customs Enforcement, ICE Field Offices, https://tinyurl.com/557j7mmn (last updated Sept. 2, 2026) .......... 15

Webster's New English Dictionary (6th ed. 1951) .......... 10

## JURISDICTIONAL STATEMENT

The magistrate judge had jurisdiction over the misdemeanor criminal cases of defendants Carlos Javier Espinoza-Cabrera and Franklin Amadeo Tenecela-Aguaiza pursuant to 18 U.S.C. § 3401 and 28 U.S.C. § 636. Following a bench trial, the magistrate judge entered judgments of conviction on February 12, 2026, A168 (Tenecela-Aguaiza); A184 (Espinoza-Cabrera), and defendants timely appealed to the district court on March 9, 2026, A172 (Tenecela-Aguaiza); A188 (Espinoza-Cabrera). The district court, which had jurisdiction under 18 U.S.C. § 3402, vacated defendants' convictions on April 27, 2026. A77 (Tenecela-Aguaiza); A156 (Espinoza-Cabrera). The government timely filed notices of appeal on May 22, 2026. A78 (Tenecela-Aguaiza); A157 (Espinoza-Cabrera). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether "elud[ing] examination or inspection by immigration officers" in violation of 8 U.S.C. § 1325(a)(2) is a continuing offense such that venue was proper in the Northern District of New York.

## STATEMENT OF THE CASE

Following a joint bench trial, a magistrate judge found defendants guilty of violating 8 U.S.C. § 1325(a)(2), which makes it a crime for "[a]ny

alien" to "elude[] examination or inspection by immigration officers." The magistrate judge sentenced defendants to time served. Defendants appealed to the district court, which vacated their convictions after holding that venue was improper in the Northern District of New York because § 1325(a)(2) does not state a continuing offense.

## I. Statement of Facts[1]

In November 2025, a citizen reported a suspicious vehicle to the local police, who pulled it over in St. Lawrence County, New York. There, a responding Border Patrol agent encountered both defendants: Franklin Amadeo Tenecela-Aguaiza and Carlos Javier Espinoza-Cabrera. Defendants admitted they were citizens of Ecuador and lacked authorization to be in the United States. The Border Patrol agent took them into custody.

At the Border Patrol station in Ogdensburg, New York, defendants filled in the gaps. They each confessed that they had entered the United States unlawfully: Tenecela-Aguaiza at an unknown location near El Paso, Texas, around August 2021, and Espinoza-Cabrera at an unknown location near Miami, Florida, around September 2021. Defendants also

[1] The following facts are drawn from the trial stipulations submitted to the magistrate judge. *See* A162-163 (Tenecela-Aguaiza); A178-179 (Espinoza-Cabrera).

confessed that, at least until Ogdensburg, they had never been examined or inspected by immigration officers or had any other contact with federal officials for immigration-related purposes. Fingerprint checks likewise revealed no record of defendants' legal admission to the United States.

## II. Procedural History

**A.** Defendants were charged by complaint in the Northern District of New York with "elud[ing] examination or inspection by immigration officers," in violation of 8 U.S.C. § 1325(a)(2). A194-195. Their cases were assigned to Magistrate Judge Gary L. Favro.

In November 2025, defendants moved to dismiss the complaint for lack of venue, among other grounds not relevant here. They argued that venue was improper in the Northern District of New York because the offense of eluding inspection is complete when an alien slyly evades the inspection process at a port of entry; it does not extend beyond that initial evasion. A221; *see* A202.[2] And since neither defendant crossed into the country at a port of entry in the Northern District of New York, they could not have "committed" an eluding-inspection offense in that district, or so

[2] This brief uses the statutory term "alien" to conform with its use in the United States Code. Congress has defined "alien" as a person who is not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3).

defendants claimed. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; *see* A227.

In December 2025, Magistrate Judge Favro disagreed with defendants and denied their joint motion. He reasoned that § 1325(a)(2) creates a continuing offense because "the act of eluding examination or inspection … occurs each and every day when a person who has entered the country illegally fails to submit to inspection or examination by immigration officials." A231. After the government superseded the complaint with separate informations as to each defendant, A161 (Tenecela-Aguaiza); A177 (Espinoza-Cabrera), their cases proceeded to trial. In February 2026, Judge Favro held a one-day joint bench trial on stipulated facts and convicted defendants of eluding inspection in violation of § 1325(a)(2). *See* A159, A174. He sentenced defendants to time served and imposed no fine. A168 (Tenecela-Aguaiza); A184 (Espinoza-Cabrera).

**B.** Defendants respectively appealed their convictions to the district court, which reversed in materially identical orders. A77 (Tenecela-

Aguaiza); A156 (Espinoza-Cabrera).[3] The district court concluded that § 1325(a)(2) did not state a continuing offense because an alien cannot elude inspection beyond the moment or place of his arrival. Instead, the court held, "a noncitizen 'eludes examination or inspection[]' only where and when the noncitizen is at risk of undergoing examination or inspection, i.e., at open and operating ports of entry." A70 (quotations omitted).

Accordingly, the district court ruled that venue was improper in the Northern District of New York. It vacated defendants' convictions and remanded with instructions to dismiss their cases without prejudice to refiling in the border districts where defendants crossed over. A77.[4]

This timely appeal followed.

## SUMMARY OF ARGUMENT

The district court erred in vacating defendants' convictions for improper venue based on its conclusion that 8 U.S.C. § 1325(a)(2) does not

---

[3] Because the district court's decisions in the two cases are materially identical, citations to the court's reasoning from this point forward are to the opinion in Tenecela-Aguaiza's case only.

[4] Both defendants are still in the United States. U.S. Immigration and Customs Enforcement (ICE) released them on bond pending removal proceedings. ICE has informed the United States Attorney's Office that the removal proceedings are ongoing.

create a continuing offense. The plain language of that provision makes clear that the crime of "elud[ing] … inspection"—like the crime of "escaping" (as a prison) or "evading" (as registration requirements)—extends beyond the initial moment of evasion. It continues until the alien submits to a statutorily mandated "inspection," which occurs whenever and wherever the alien is found, not just at the moment he arrives at a port of entry. Because the text is unambiguous on this point, the Court need go no further in finding that eluding inspection is a continuing offense. But other interpretive clues run in that direction, too. The statutory history, the venue rule that Congress specified for § 1325 crimes, and other canons of statutory construction confirm that eluding inspection is a continuing offense. This Court should reverse the district court's contrary holding and reinstate defendants' convictions.

## ARGUMENT

### This Court Should Hold That Eluding Inspection Under § 1325(a)(2) Is a Continuing Offense for Venue Purposes

#### A. Standard of Review

Questions of statutory interpretation are reviewed de novo. *E.g.*, *United States v. Bulloch*, 165 F.4th 676, 682 (2d Cir. 2026), *petition for cert. filed*, No. 26-5081 (July 6, 2026).

### B. Legal Background

Federal law in 8 U.S.C. § 1325(a) criminalizes three actions by an alien. The first is "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). The second is "elud[ing] examination or inspection by immigration officers." *Id.* § 1325(a)(2). And the third is "attempt[ing] to enter or obtain[ing] entry" by willfully misrepresenting or concealing material facts. *Id.* § 1325(a)(3). This case deals with the second prohibition, subsection (a)(2). In addition, a separate section, 8 U.S.C. § 1329, provides that violations of § 1325 may be prosecuted anywhere they "may occur or" anywhere a defendant charged with one of those crimes "may be apprehended."

To be sure, statutory venue rules are subject to constitutional constraints. *See Abouammo v. United States*, 146 S. Ct. 1571, 1577 n.3 (2026). While Congress may, as it does in § 1329, specify a venue rule to accompany a given offense, it "lacks the power" to override the safeguards supplied by the Constitution, *id.*, which instructs that criminal trials must occur where the offense "shall have been committed," U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI. Nevertheless, "Congress's view

of appropriate venue … may make a difference to the analysis." *Abouammo*, 146 S. Ct. at 1577 n.3. Even if that view is "not coincident with" the usual test for determining where a crime is constitutionally committed, *id.*, "[i]t is significant … when Congress desires to give a choice of trial" by furnishing "specific venue provisions," *United States v. Johnson*, 323 U.S. 273, 276 (1944).

On top of specifying a venue rule, Congress may fix venue "[b]y utilizing the doctrine of a continuing offense." *Johnson*, 323 U.S. at 275. A continuing offense can be "committed in more than one district" because it is not completed by a single, isolated act but instead persists over time. 18 U.S.C. § 3237(a); *see also id.* (allowing the prosecution of offenses "in any district in which such offense was begun, continued, or completed," except "as otherwise expressly provided by enactment of Congress"). When a statute's language "clearly contemplates a prolonged course of conduct," or when "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one," the statute must be read to create a continuing offense. *Toussie v. United States*, 397 U.S. 112, 115, 120 (1970); *see id.* at 120 n.16 (applying this two-part test to determine whether a crime is continuing in the statute-

of-limitations context, while recognizing that venue cases may be subject to a more lenient test); *see also infra* pp. 27-28.

### C. The Plain Text of § 1325(a)(2) Establishes that Eluding Inspection Is a Continuing Offense

A straightforward reading of § 1325(a)(2) shows that it creates a continuing offense. The provision's two most pivotal terms—"elude" and "inspection"—compel that result. *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023) ("[S]tatutory interpretation must 'begi[n] with,' and ultimately heed, what a statute actually says."). Because Congress defined neither term, this Court looks to their ordinary, commonsense meanings, as well as the context and overall statutory scheme in which the terms are used. *Bulloch*, 165 F.4th at 682. It also considers whether a term instead carries a "technical meaning," as when it is found in a specific "technical context" (like immigration). *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 154 (2d Cir. 2026) (quotations omitted); *cf. United States v. Balde*, 943 F.3d 73, 81 (2d Cir. 2019) (recognizing that "enter" is "a specific legal term within immigration law" (quotations omitted)).

**1.** Start with the meaning of "elude." At the time of § 1325(a)'s enactment in 1952, it meant "[t]o avoid slyly or adroitly … ; to evade; …

[t]o escape the notice or perception of." Webster's New English Dictionary 267 (6th ed. 1951); *accord* A69 (noting that the parties largely agree that "the act of eluding generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded" (quotations omitted)). Linguistically, these words contemplate an ongoing act. After all, in plain English, a person "eludes" authorities—that is, he "avoids," "evades," or "escapes" them—only until he is caught, which suggests the offense continues in the meantime.

The Supreme Court has already said as much. In *United States v. Bailey*, the Court found it "clear beyond peradventure" that "escape" from federal custody is a continuing offense. 444 U.S. 394, 413 (1980). In the lower courts, too, other crimes involving "avoiding" or "evading" acts have similarly been deemed continuing. *See United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir. 1973) ("evading" taxes under 26 U.S.C. § 7201 is a continuing offense); *United States v. George*, 625 F.3d 1124, 1131 (9th Cir. 2010) (failing to register as a sex offender under 18 U.S.C. § 2250—i.e., "evading those registration requirements"—is a continuing offense (citing Seventh and Tenth Circuit cases) (quotations omitted)), *vacated on other grounds*, 672 F.3d 1126 (9th Cir. 2012); *United States v. Merino*, 44

F.3d 749, 754 (9th Cir. 1994) ("avoiding" prosecution under 18 U.S.C. § 1073 is a continuing offense);[5] *see also United States v. Martin*, 378 F.3d 578, 582-583 (6th Cir. 2004) ("fleeing and eluding" police under Michigan law is a continuing offense).

There is no reason to reach a different result with "elude." An alien who eludes inspection is like a convict who escapes from prison, or a sex offender who evades registration requirements: All of these acts extend beyond the initial moment of evasion. *See also Bailey*, 444 U.S. at 399 (describing the escapee's act as "elud[ing] … authorities").

**2.** The statutory term "inspection" is even more telling and confirms that eluding inspection is a continuing offense. As used in § 1325(a)(2) (and title 8 more generally), "inspection" is "a specific legal term within immigration law." *Balde*, 943 F.3d at 81 (quotations

[5] In *Merino*, the Ninth Circuit found that the crime of avoiding prosecution was a continuing offense for Guidelines purposes. It did not find, and could not have found, a continuing offense for venue purposes, since despite the statute's use of language that otherwise connotes an ongoing act, Congress specified a venue rule for avoiding-prosecution crimes that restricts the prosecution of such offenses to certain districts. *Compare* 18 U.S.C. § 1073, *with* 8 U.S.C. § 1329 (expanding, not restricting, venue to permit prosecution of § 1325 offenses wherever the defendant is "apprehended," not just where his crimes "occur").

omitted). It refers to the administrative screening that determines whether an alien is admissible to the United States. *See* 8 U.S.C. § 1225(a)-(b). An alien cannot be "admitted" as a legal matter unless he undergoes "inspection … by an immigration officer." *Id.* § 1101(a)(13)(A). No doubt, then, all aliens who arrive at a border port of entry must submit to an "inspection" as contemplated by § 1325(a)(2). Everyone agrees on this point. *See* A70; *United States v. Corrales-Vazquez*, 931 F.3d 944, 948 (9th Cir. 2019).

But "inspection" is not limited to ports of entry, or to the moment that an alien crosses the border. As made clear by the section that governs "Inspection by immigration officers," 8 U.S.C. § 1225, any alien "who arrives … at a designated port of arrival"; an alien "who arrives … *not* at a designated port of arrival"; and—most critically here—any alien "present in the United States who has not been admitted" are all "deemed for purposes of this chapter an applicant for admission." *Id.* § 1225(a)(1) (emphasis added); *accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 76 (2d Cir. 2026). And all "applicants for admission," in turn, "shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3); *accord Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2087 (2026). "Inspection" thus anticipates an

ongoing duty, one that extends beyond the context of arrival to cover unadmitted aliens of *all* kinds, not just those in the process of arriving in the United States. Aliens who cross the border illegally and are already "present in the United States" remain statutorily obligated to be inspected. 8 U.S.C. § 1225(a)(1), (3).

Section 1225(b) underscores that the inspection obligation is ongoing. That provision, which describes the content of an "inspection," reiterates that "aliens arriving in the United States" and "certain other aliens who have not been admitted" are subject to the same inspection procedure. 8 U.S.C. § 1225(b)(1); *accord United States v. Gambino-Ruiz*, 91 F.4th 981, 987-988 & n.5 (9th Cir. 2024) (agreeing that "a single inspection procedure applies to" both arriving aliens and "'*aliens who have not been admitted*'" (quoting 8 U.S.C. § 1225(b)(1))). That procedure includes a general "[s]creening" to determine whether the alien is inadmissible or otherwise eligible for expedited removal (a fast-track process that enables an alien's removal without a hearing before an immigration judge). 8 U.S.C. § 1225(b)(1)(A); *see id.* § 1225(a)(5). It also includes "[a]sylum interviews" when the alien claims a credible fear of persecution sufficient to justify further investigation. *Id.* § 1225(b)(1)(B). Both expedited

removal questioning and asylum interviews are processes that regularly occur in places other than ports of entry. *See*, *e.g.*, *id.* § 1225(b)(1)(B)(i) ("An asylum officer shall conduct interviews … either at a port of entry or at such other place designated by the Attorney General.").

The immigration regulations likewise address aliens "present in the United States who ha[ve] not been admitted." 8 C.F.R. § 235.1(f)(2). Section 235.1, for its part, confirms that such aliens remain "subject to" inspection and removal under "section 235(b) … of the Act" (i.e., 8 U.S.C. § 1225(b)). *Id.* Section 235.3 provides that aliens who "have entered the United States without having been admitted" may additionally be eligible for expedited removal, again referring back to the inspection provisions of "section 235(b)(1) of the Act." *Id.* § 235.3(b)(1)(ii). And Section 235.2 sets out the rule for paroling aliens without inspection, allowing immigration officers to "defer the inspection … of any alien, to another Service office or port-of-entry." *Id.* § 235.2(a). Needless to say, not all "Service office[s]" or even ports of entry are located at the border. *See*, *e.g.*, U.S. Citizenship & Immigr. Servs., Find A USCIS Office, https://tinyurl.com/bdf99y6y (last updated Mar. 12, 2024); U.S. Immigr. & Customs Enforcement, ICE Field Offices, https://tinyurl.com/557j7mmn (last

updated Sept. 2, 2026); U.S. Customs & Border Patrol, Locate a Port of Entry, https://tinyurl.com/3bu3z55n; *see also* 8 C.F.R. § 100.4(a).

The upshot is that aliens are inspected not just at the border. They are (and "shall be") inspected wherever and whenever they are found. 8 U.S.C. § 1225(a)(3). Until that happens, they are not legally "'admitted'" to the United States even if they are already on U.S. soil. *Al Otro Lado*, 146 S. Ct. at 2087. And since immigration law imposes this ongoing duty to inspect, so, too, do aliens have an ongoing duty to submit to inspection. An applicant for admission who neglects to do so "eludes" "inspection" for as long as he remains in the country without undergoing the § 1225-mandated procedure, which generally occurs (if not at the border) when an alien is apprehended. This makes sense, too. Immigration officers who encounter unadmitted aliens in the interior, like those who encounter unadmitted aliens at a port of entry, have to determine their admissibility somehow. A "single inspection procedure [that] applies to" both scenarios, *Gambino-Ruiz*, 91 F.4th at 988 & n.5, is how officers know who is statutorily inadmissible, who is subject to expedited removal, who has a credible fear of persecution, and so on.

**3.** Other features of the text reinforce the continuing-offense interpretation. Take, for example, § 1325(a)(2)'s neighboring provisions in (a)(1) and (a)(3). Both use language that clearly limit their reach to "entry" crimes: (a)(1) imposes a criminal sanction on any alien who "enters or attempts to enter … at any time or place other than as designated by immigration officers" (i.e., a port of entry), while (a)(3) deals with an alien who "attempts to enter or obtains entry" by willful misrepresentation or concealment. 8 U.S.C. § 1325(a)(1), (a)(3). These verbs—entering and obtaining entry—"hardly suggest[] continuity" because they definitionally contemplate a discrete time and place, tethering the offense to the act of physical entry. *United States v. Cores*, 356 U.S. 405, 408 n.6 (1958).[6] For the reasons discussed, *supra* pp. 9-11, the same cannot be

---

[6] To be sure, in *Cores*, the Supreme Court said that § 1325(a) is "not continuing" because "'entry' is limited to a particular locality and hardly suggests continuity." *Cores*, 356 U.S. at 408 n.6. But that statement was dicta, and the Supreme Court has since opined that a statute's use of a verb that might in some contexts describe a discrete act can nevertheless count as a continuing offense. *See Bailey*, 444 U.S. at 413; *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999) (noting that excessive focus on the verb alone "unduly limits the inquiry into the nature of the offense").

At any rate, the *Cores* Court did not address eluding inspection, instead appearing to limit its dicta to § 1325(a)(1)'s unauthorized-entry offense. *Cores*, 356 U.S. at 408 n.6. For what it is worth, the same is true

said of the verb "elude." That "materially different term" instead communicates a "more open-ended formulation," one that continues beyond entry. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (quotations omitted).

More still, an interpretation that cabins § 1325(a)(2) to an act of physical entry would require importing a limitation into the text that does not exist. Such an interpretation would criminalize "elud[ing] examination or inspection by immigration officers *upon entry*" or "elud[ing] examination or inspection by immigration officers *at a port of entry*." But these insertions would be an "[a]textual judicial supplementation" of the statute, which is "particularly inappropriate" where, as here, "Congress has shown that it knows how to adopt the omitted language." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019); *see also Bates v. United States*, 522 U.S.

of the Fourth Circuit's unpublished decision in *United States v. Cavillo-Rojas*, which said that "a § 1325(a) offense is completed at the time of the defendant's illegal entry." 510 Fed. App. 238, 249 (4th Cir. 2013). That sweeping language notwithstanding, there is reason to doubt that it extends to § 1325(a)(2). The government brought a "§ 1325(a) charge" without distinguishing between unauthorized entry and eluding inspection. *Id*. at 248. And the Fourth Circuit's opinion focused on the word "enter" in § 1325(a)(1); it did not separately consider § 1325(a)(2)'s use of the verb "elude." *See id*.

23, 29 (1997) (explaining that courts must "resist reading words or elements into a statute that do not appear on its face"). The fact that (a)(2) does not have such limiting language, while the other two provisions of § 1325(a) refer explicitly to entry, supports construing the eluding-inspection offense as continuing.

### D. Other Interpretive Clues Confirm that Eluding Inspection Is a Continuing Offense

Because "the statutory language is unambiguous" in creating a continuing offense, "the inquiry ends there." *Bulloch*, 165 F.4th at 683. Even still, the statutory history, other aspects of the statutory framework, and the canon of constitutional avoidance all confirm that the eluding-inspection offense is continuing.

**1.** The statutory history of § 1325(a) reinforces the textual analysis. In the early twentieth century, aliens were to be deported if they entered the United States "at any time or place other than as designated by immigration officials" or if they "enter[ed] without inspection." Immigration Act of 1917, Pub. L. No. 64-301, § 19, 39 Stat. 874, 889. In 1929, however, Congress revised the "enter without inspection" language to "elude[] examination or inspection by immigration officials." Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551. (At the same time,

it also subjected aliens who violated that provision to criminal sanctions, as opposed to civil removal.) This history suggests that Congress expanded the scope of the eluding-inspection offense beyond the mere point of entry. By deleting the word "enter" (a word that suggests a one-time, discrete act) and inserting the word "elude," it distinguished the crime from one that occurs only during entry. *Cf. Snyder v. United States*, 603 U.S. 1, 12 (2024) (finding that, where Congress eliminated language that it had previously used, it "would be strange to interpret [the statute] … to mean the same thing now as it meant" before amendment).

Equally revealing, when Congress enacted this 1929 predecessor to § 1325(a), it purported to use as a model a Canadian statute that imposed criminal penalties on any person "who *at a port of entry* eludes examination by an officer." Restriction of Immigration: Hearings on H.R. 5, H.R. 101, and H.R. 561 Before the H. Comm. on Immigration & Naturalization, 68th Cong. 680 (1924) (emphasis added). Yet Congress chose not to import the "port of entry" requirement from the Canadian statute, even while it borrowed much of that statute's other language. This history, too, belies a reading of § 1325(a)(2) that would require implicitly adding a limitation ("at a port of entry") that Congress not only openly inserted

in § 1325(a)*(1)*, but expressly declined to adopt in § 1325(a)*(2)*. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Had Congress intended to restrict § 1963(a)(1) to an interest in an enterprise, it presumably would have done so expressly as it did in the immediately following subsection (a)(2).").

**2.** Other aspects of the statutory framework point in the same direction. Most obviously, the provisions that supply the various grounds for inadmissibility explain why the inspection mechanism is required in the first place. *Cf. Dep't of State v. Muñoz*, 602 U.S. 899, 911-912 (2024) (recognizing "the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens"). Immigration officers inspect aliens to discover whether they have engaged or will seek to engage in, among other things, "terrorist activity," "espionage," "sabotage," efforts to "overthrow" the U.S. government, the theft of sensitive information or technology, or "any other unlawful activity." 8 U.S.C. §§ 1182(a)(1)-(3), 1225(c)(1). They also inspect aliens to determine whether they are criminals, traffickers, prostitutes, money launderers, or carriers of a "communicable disease." *Id.* § 1182(a)(1), (2). Such aliens

are statutorily inadmissible because their past, present, or planned conduct shows that they would put U.S. communities in harm's way.

In *Bailey*, the Supreme Court recognized that a crime may be continuing when, by its nature, it presents a "continuing threat to society," "'such that Congress must assuredly have intended that it be treated as a continuing [crime].'" 444 U.S. at 413 (quoting *Toussie*, 397 U.S. at 115). For that reason, the Court explained, escape from custody is a continuing offense. *Id.* The same rationale has likewise been applied to offenses such as failing to appear for sentencing (i.e., avoiding sentencing), *United States v. Gray*, 876 F.2d 1411, 1419 (9th Cir. 1989), and failing to register as a sex offender (i.e., "elud[ing] SORNA's registration requirements"), *United States v. Lewis*, 768 F.3d 1086, 1093 (10th Cir. 2014).

The inadmissibility provisions of 8 U.S.C. § 1182 show why eluding inspection stands on the same plane. Aliens who enter the country unlawfully, and then evade inspection for dangerous attributes in the years that follow, represent a "continuing threat" to American citizens. *Bailey*, 444 U.S. at 413. To counter that threat, immigration law requires that all unadmitted aliens, whether arriving at a port of entry or already present, be inspected. Construing § 1325(a)(2) to create an offense that

continues until the alien submits to inspection is the most logical way to enforce that requirement.

**3.** Lastly, the venue rule of § 1329—which expressly authorizes the prosecution of § 1325 violations wherever they "occur or" wherever the offender is "apprehended"—strongly suggests that Congress viewed at least one of § 1325's offenses to be continuing. *See Abouammo*, 146 S. Ct. at 1577 n.3. If all the offenses described in § 1325 were limited to the place of entry, the venue provision would be entirely unconstitutional for § 1325 because it would purport to allow prosecutors to charge an alien other than where he committed the offense.

The constitutional-avoidance canon (or the presumption of constitutionality), *see Clark v. Martinez*, 543 U.S. 371, 381 (2005), counsels that Congress intended that some offense conduct under § 1325 could occur in the place of apprehension. And since the other criminal prohibitions of § 1325 describe "entering" offenses only, the venue provision's inclusion of § 1325 would be meaningless *unless* it applied to § 1325(a)(2).

### E. The District Court's Contrary Reasoning Falls Short

The district court offered six reasons for its contrary reading of § 1325(a)(2). None persuades.

**1.** The district court concluded that eluding inspection was not continuing because the "inspection" to which § 1325(a)(2) refers could occur only at a border port of entry. A70. For all the reasons given, *supra* pp. 11-15, the court's premise is flawed. A statutory "inspection" must be conducted of all "applicants for admission" regardless of where the alien is found or where the inspection takes place. And as a matter of practice, inspections regularly occur between ports of entry, because they occur (as they must) whenever an alien is apprehended to determine whether he is subject to expedited removal, has a credible fear of persecution, or is otherwise statutorily inadmissible. *See* 8 U.S.C. § 1225(a)-(b).

In reaching its contrary conclusion, the district court leaned heavily on a divided Ninth Circuit opinion in *United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019). That opinion, in turn, adopted wholesale the Court's reasoning from a case decided nearly fifty years ago, *United States v. Rincon-Jimenez*, 595 F.2d 1192 (9th Cir. 1979). *Rincon-Jimenez* held that eluding inspection was not a continuing offense (albeit only for

statute-of-limitations purposes, not venue purposes, *see infra* pp. 27-28). *Rincon-Jimenez*, 595 F.2d at 1193-1194. In the process, it concluded that a statutory "inspection" referred to a process that "take[s] place at the time of entry, a fixed point in time." *Id.* at 1193.

But even if it were rightly decided, *Rincon-Jimenez* long predates Congress's efforts in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to expand the inspection requirement.[7] Relying on the version of § 1225 in place at the time, *Rincon-Jimenez* referred to that section as requiring "a medical examination and physical inspection of each *entering* alien." 595 F.2d at 1193 (emphasis added); *see* Immigration and Nationality Act, Pub. L. No. 82-414, 66 Stat. 163, 198 (1952) (requiring the "inspection" of "aliens … seeking admission," without defining "seeking admission," and providing that "[a]ll aliens

[7] The fact that the IIRIRA postdates the enactment of § 1325(a)(2)'s text should not be taken to mean that it left unaltered the meaning of the term "inspection" in that provision. As elsewhere explained, "inspection" carries a technical meaning in the immigration context: It refers to the "inspection" required by § 1225. And because Congress amended § 1225 to expand whom an inspection covers and when, it necessarily touched the criminal prohibition in § 1325. After all, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds as recognized in Riley v. Bondi*, 606 U.S. 259 (2025).

arriving at ports of the United States shall be examined by" immigration officers). Now, of course, "inspection" covers *all* unadmitted aliens, not just those arriving at a port of entry. *See Al Otro Lado*, 146 S. Ct. at 2087. And the majority in *Corrales-Vazquez* actually acknowledged as much, admitting that "an immigration inspection can technically occur" in places other than ports of entry, and conceding that "the border patrol agent who discovered [the defendant] technically performed an 'inspection' at the time he was found." *Corrales-Vazquez*, 931 F.3d at 948 n.4.

The district court had every reason to chart a different course from *Corrales-Vazquez*. It was neither bound by circuit precedent nor wed to an outdated reading of "inspection" that fails to account for the continuing duty to inspect and be inspected that the statute now contemplates. *Corrales-Vazquez* (and *Rincon-Jimenez*) lacks utility in this context.

**2.** The district court also rejected the government's continuing-offense interpretation on the ground that "a noncitizen cannot avoid prosecution under Section 1325(a)(2) by submitting to … inspection … after failing to do so at the time of entry." A71. True enough. Although he may be able to terminate the continuing offense by belatedly fulfilling his statutory duty to submit to an inspection, an alien cannot retroactively

cure that offense merely by being inspected after sneaking into the country.

But why that should matter to the venue analysis (or any analysis) is not clear. Our criminal laws seldom, if ever, allow someone to purge his prior criminal conduct by bringing a continuing offense to an end. The same is true of "escape" from federal custody, *Bailey*, 444 U.S. at 413, and of conspiracy—another widely recognized example of a continuing crime. As the Supreme Court said in that context, withdrawal from a conspiracy "terminates the defendant's liability" for whatever acts might follow his withdrawal, but he still "remains guilty of conspiracy." *Smith v. United States*, 568 U.S. 106, 111 (2013). So it is here.

**3.** The district court next brushed off the government's analogy between the crime of "escaping" (as in *Bailey*) and that of "eluding," observing that *Bailey* dealt with whether "escape" was a continuing offense for statute-of-limitations purposes. And yet, the court added, "the Government separately admits that the continuing offense analysis is different for purposes of venue as compared to the statute of limitations." A71-72.

The district court rightly understood that "the continuing offense analysis for venue purposes is obviously different from the continuing offense analysis for statute of limitations." *United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004) (quotations omitted); *see also id.* ("An offense may begin, continue, or end in different locations without qualifying as a continuing offense for statute of limitations purposes." (quotations omitted)); *accord United States v. Canal Barge Co.*, 631 F.3d 347, 352-353 (6th Cir. 2011). Because of "the tension between the doctrine of continuing offenses and the policy of repose embodied in statutes of limitations," courts often exhibit "restraint in labeling crimes as continuing." *Bailey*, 444 U.S. at 413-414. But that restraint is not warranted when a continuing-offense interpretation would not extend the statute of limitations. *Id.* The Supreme Court implied as much in *Toussie* (a statute-of-limitations case), having expressly distinguished its reluctance to apply the continuing-offense doctrine from "cases deal[ing] with venue." 397 U.S. at 120 n.6. In subsequent decisions, moreover, the Supreme Court has not expressed a similar reluctance to apply a continuing-offense interpretation in cases addressing venue. *See*, *e.g.*, *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-282 (1999).

But none of this means that *Bailey* is inapplicable here. The point of the government's analogy was to illuminate the semantic resemblance between "escape" and "elude," both of which express an ongoing act and are interchangeable in many contexts (including this context). *See supra* pp. 9-11; *see also Corrales-Vazquez*, 931 F.3d at 949 (stating that "elude" "contemplates a risk of exposure to, and subsequent escape from, the object being eluded"); *United States v. Oscar*, 496 F.2d 492, 494 (9th Cir. 1974) (defining "elude" in § 1325(a)(2) to mean "avoid or escape"). Whatever the analytical distinction between venue and statute-of-limitations cases, it does not mean that principles of statutory interpretation—like reading words in accordance with their everyday linguistic meaning—fly out the window.

More to the point, the court got the implication of *Bailey* and *Toussie* exactly backward. Since the continuing-offense analysis is more permissive in the context of venue than in the statute-of-limitations context, the distinction between those contexts helps the government's position, not hurts it. A crime that "is deemed to be a continuing offense for venue purposes … merely expose[s] [the defendant] to prosecution in a different

district," *Canal Barge*, 631 F.3d at 353, which is all the government seeks here.

In all events, while this Court—in this venue case—need not go so far as to resolve the statute-of-limitations question, *Toussie* erects no bar to doing so. When "the explicit language of the substantive criminal statute compels such a conclusion [that the offense is continuing], or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one," the reluctance that might otherwise attach to the continuing-offense doctrine vanishes. *Toussie*, 397 U.S. at 115; *see, e.g.*, *United States v. Pontz*, 132 F.4th 10, 25 (1st Cir. 2025) (either "statutory language" or "congressional intent" can overcome the presumption against continuing offenses); *Bailey*, 444 U.S. at 413. And as explained above, both the language (*supra* pp. 9-18) and nature (*supra* pp. 20-22) of § 1325(a)(2) support the continuing-offense interpretation here.

**4.** The district court additionally determined that two superfluity problems ran against the government's interpretation of § 1325(a)(2) here. First, the court said, construing § 1325(a)(2) to do anything more than prohibit ducking inspection while at a port of entry would render

superfluous the immediately preceding subsection, § 1325(a)(1). A72-73. And second, the court theorized that if eluding inspection were continuing, the section that criminalizes an alien's failure to register, 8 U.S.C. § 1306(a), would likewise be superfluous. A73-74. The court is wrong on both fronts.

*a.* The purported overlap between § 1325(a)(1) and § 1325(a)(2) is overstated. Even setting aside the fact that (a)(1) does independent work by covering "attempt" crimes, *Corrales-Vazquez*, 931 F.3d at 950, subsection (a)(1) would not be surplusage on the very reading of (a)(2) that the district court rejected.

For starters, most dictionary definitions of "elude," including those on which *Corrales-Vazquez* relied, indicate that the word "elude" entails a certain purpose: The actor must either intend, or hope, that the object of the eluding actually be circumvented. *See Corrales-Vazquez*, 931 F.3d at 948-949. This mental state spells a difference between the two provisions. If, for example, an alien (incorrectly) thinks that it does not matter whether he checks in with immigration officers on his way into the United States, and he therefore enters at a random spot indifferent to whether he is inspected, the alien has clearly violated (a)(1). He

"enter[ed] the United States at any time or place other than as designated by immigration officers." But the alien has not violated (a)(2), because he lacked the evasive purpose that the word "elude" connotes.

More relevantly here, construing (a)(2) to state a continuing offense answers whatever superfluity concerns remain. True, if an alien crosses into the country at a random spot—because he knows about the "risk of exposure to" inspection at a port of entry, and "escape[s] from" that risk by avoiding the port of entry altogether, *Corrales-Vazquez*, 931 F.3d at 949—the alien has violated (a)(1) and (a)(2) alike. He both "enter[ed] the United States at any time or place other than as designated by immigration officers" and "elude[d] examination or inspection" in the process. But once the alien effects the improper entry, the crime proscribed by (a)(1) ends. The crime proscribed by (a)(2) continues, however, until the alien submits to the "inspection" that immigration law constantly requires. The district court's invocation of the antisuperfluity canon ignored these points entirely.

*b.* The district court went equally astray in finding that the failure-to-register prohibition in § 1306(a) would likewise be rendered superfluous by the continuing-offense interpretation. Sections 1325(a)(2) and

1306(a) cover different things. The former penalizes eluding "inspection," which is a prerequisite to admission; it is a legal determination that the alien is admissible. The latter penalizes failing to "register," which is a requirement that applies even to aliens who have been admitted or paroled. It also carries a time constraint, requiring registration within 30 days after entering the United States. *See* 8 U.S.C. § 1302.

In other words, the process that offenders are evading—be it inspection or registration—is not the same. And while (no doubt) many offenders are guilty of both, others could be guilty of one offense but not the other. For example, an alien who illegally crosses the border and eludes inspection before he is apprehended (and inspected) 21 days later violates § 1325(a)(2) but not § 1306(a). The same is true of an alien who submits registration documents as part of his visa application but illegally crosses the border and eludes inspection before his visa application is approved, or perhaps even after it is denied. Conversely, an alien who is inspected at the border and paroled into the country, but who waits three months to register, likely violates § 1306(a) but not § 1325(a)(2). As these examples show, the two prohibitions do independent work.

Regardless, any redundancy between the prohibitions does not justify rewriting the plain language of § 1325(a)(2). "Congress sometimes enacts provisions that are superfluous," and that is "understandable." *Al Otro Lado*, 146 S. Ct. at 2092, 2094 (quotations omtted). Often such superfluity is "a congressional effort to be doubly sure"; other times it is due to "congressional inadvertence or lack of foresight." *Barton v. Barr*, 590 U.S. 222, 239 (2020). But either way, it does not overcome "the cardinal canon that a legislature says in a statue what it means and means in a statute what it says." *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 406 (2026) (quotations omitted).

**5.** The court also invoked a structural argument to support its non-continuing interpretation. According to that argument, Congress created a continuing offense in § 1325's neighboring provision, 8 U.S.C. § 1326, by criminalizing being "found in" the United States after illegal reentry. But it failed to include similar "found in" language in § 1325(a). This suggests that Congress did not mean to make illegal entry (as opposed to illegal reentry) a continuing offense, or so the argument goes. A74-75.

That reasoning is flawed. For one thing, this Court has ruled that § 1326 does *not* state a continuing offense for reasons that are not especially relevant to the outcome here—except for the fact that they cheapen the juxtaposition on which the district court relies. *See United States v. Rivera-Ventura*, 72 F.3d 277, 281-282 (2d Cir. 1995) (explaining that "found in" does not create a continuing offense but instead describes the confluence of events that must occur before the crime is complete: authorities must "both discover the illegal alien in the United States" and "know, or with the exercise of diligence … could have discovered, the illegality of his presence"). For another thing, Congress's use of the word of "elude" in § 1325(a)(2)—a word that semantically expresses an ongoing act—suggests it would not have needed to include the "found in" language there. "Elude," along with the provision's cross-reference to the ongoing duty of "inspection," do plenty of work on their own to create a continuing offense.

At any rate, whatever negative implication may have derived from the lack of "found in" in § 1325, it is displaced by other interpretive tools pointing in the opposite direction. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017). The tools that array in the government's favor here—

plain meaning, statutory history, and other contextual clues—richly outweigh the district court's structural implication, even assuming it still has traction in light of *Rivera-Ventura*.

**6.** Lastly, the district court concluded that the best way to avoid constitutional problems with the venue provision of § 1329 was to read it as permitting the prosecution of § 1325 offenses in the place of apprehension only for individuals who violated § 1325 in U.S. territories lacking a district court. A75-76. In reaching this conclusion, the court spurned the government's far less convoluted theory of constitutional avoidance, *supra* p. 22, on the ground that a five-Justice majority has voiced "doubt" that the avoidance canon can be used "to *expand* the reach of a criminal statute." *United States v. Davis*, 588 U.S. 445, 463 (2019). That result, the Supreme Court reasoned, would "sit uneasily with the rule of lenity's teaching that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *Id.* at 464.

But *Davis*'s lenity rationale is inapplicable here. "[T]he rule of lenity is typically invoked only when interpreting the substantive scope of a criminal statute or the severity of penalties that attach to a conviction—not the venue for prosecuting the offense." *Canal Barge*, 631 F.3d at 353.

This is because fixing venue—unlike, for example, increasing a defendant's prison sentence—would not subject an offender to "additional punishment" for conduct that the law had "not previously been understood to reach." *Davis*, 588 U.S. at 463-464. That rule holds in this case. Construing the eluding-inspection offense as continuing does not broaden the substantive scope of § 1325(a)(2): The same offense that an alien might commit at a port of entry—eluding inspection—simply continues, such that venue is proper in districts other than those at the border. Nor does a continuing-offense interpretation subject those who elude inspection to greater penalties. Whether apprehended at the border or in the interior, first-time offenders cannot receive more than six months in prison. *See* 8 U.S.C. § 1325(a).

In any event, as the Supreme Court has reiterated multiple times since *Davis*, the rule of lenity is a tie-breaker of last resort. It "applies only if[,] after seizing everything from which aid can be derived, there remains grievous ambiguity." *Pugin v. Garland*, 599 U.S. 600, 610 (2023) (quotations omitted); *see, e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 152-153 (2024) (declining to apply the rule of lenity because the traditional tools of statutory interpretation reduced "two grammatically permissible

readings of the statute" to "one"); *Brown v. United States*, 602 U.S. 101, 122 (2024). Because the avoidance canon helps only to confirm the government's semantic reading of the statute, there is no sound basis for turning to the rule of lenity.

## CONCLUSION

For the reasons stated, this Court should reverse the district court's order as to each defendant and reinstate defendants' convictions.

Respectfully submitted,

A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

M.J. KIRSCH MUÑOZ
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 549-8941
Mary.Jessica.Munoz2@usdoj.gov

SEPTEMBER 4, 2026

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,469 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

/s/ M.J. Kirsch Muñoz
M.J. KIRSCH MUÑOZ

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the Second Circuit using the ACMS system. I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

/s/ M.J. Kirsch Muñoz
M.J. KIRSCH MUÑOZ